# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DEXTER HUGHES (M11136), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10 C 2086 |
| | ) | |
| v. | ) | Hon. Harry D. Leinenweber |
| | ) | |
| SHERIFF TOM DART, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Cook County Sheriff Tom Dart and Cook County Jail Executive Salvadore Godinez's (hereinafter, "the Defendants") joint motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Motion is granted in part and denied in part.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are drawn from Plaintiff's Complaint. For purposes of evaluating defendants' motion to dismiss, the facts are accepted as true and all reasonable inferences are made in the light most favorable to the Plaintiff. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010) (citing *Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001)). This Court also "construe[s] pro se complaints liberally and hold[s] them to a less stringent standard than formal pleadings drafted by lawyers." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Erickson v. Pardus*, 551 U.S 89, 94 (2007) (per curiam); *Obriecht v. Raemisch*, 417 F.3d 489, 492 n.2 (7th Cir. 2008)).

Plaintiff claims that he was a pre-trial detainee at the Cook County Jail. (Dkt. No. 6 at pg. 2, ¶ 3). On June 20, 2008, when he was processed in the jail, he told the jail staff that he had been previously taking psychotropic medication, seeing a therapist since he was age 12, and had been treated in mental institutions in the past. (*Id*. at pg. 4, ¶ 13). He told the intake staff that he was not then taking his prescribed medication since his arrest, and asked to see a psychiatrist so that he could receive his medication. (*Id*.).

Plaintiff alleges that he did not receive any type of treatment despite this request, but instead was transferred to Division One, a maximum security unit at the jail. (*Id*. at pgs. 4-5, ¶¶ 15-16). He alleges that this failure to conduct proper screening is common at the jail. Plaintiff points to a July 11, 2008 report by United States Attorney for the Northern District of Illinois in which Plaintiff claims that the Department of Justice found that the jail routinely fails to properly screen and identify incoming detainees' medical needs including mental illness and suicide risks. (*Id*. at pg. 4, ¶ 14).

Plaintiff renewed his request for psychiatric treatment and medication while at Division One, but this too was dismissed by the jail staff. (*Id*. at pg. 5, ¶ 17). He claims that he became severely depressed, heard voices urging him to commit suicide and attempted to hang himself in August 2008. (*Id*.). The Division One deputies rescued Plaintiff from his suicide attempt and transferred him to the mental illness wing (2 North / 2 South) at Cermak Hospital. (*Id*.). Plaintiff believes that he should have originally been placed at Cermak Hospital during his initial intake screening, and if this had occurred, he would have never attempted suicide because he would have received mental health treatment. (*Id*. at pg. 5, ¶ 18).

Plaintiff alleges that he received mental health treatment for manic depression with a delusional component and suicide ideation including receiving a prescription for psychotropic medication from Defendant Dr. Luke at Cermak Hospital. (*Id*. at pg. 5, ¶ 19). Plaintiff was then transferred back to jail — this time to Division Ten, a unit for detainees with medical conditions including mental illness. (*Id*. at pg. 5, ¶ 20).

Plaintiff claims that under jail policy he should have been placed on the second floor of Division Ten and observed by jail staff to insure that his medications were effective and not causing side effects. (*Id*. at pg. 5, ¶ 21). He also claims that he should have been provided group therapy under established policy to help his adaptation into jail life. (*Id*.). Instead, he was placed on the third floor of Division Ten and did not receive the monitoring or therapy despite his requests. (*Id*. at pg. 5, ¶ 22).

Plaintiff claims that the third floor of Division Ten is a very violent and unstable area. (*Id*.). He argues that the conditions were created by Defendants Dart and Godinez's decision to close a residential treatment unit at the jail in the summer of 2008. (*Id*. at pg. 6, ¶ 23). The residential treatment unit housed 300 to 400 mentally ill pre-trial detainees. (*Id*.). The displaced mentally ill detainees were transferred to Divisions Two and Ten. (*Id*.). Plaintiff claims that Dart and Godinez's decision to close the residential treatment unit was against expert medical advice. (*Id*.). He also claims that the relocation was not done for the benefit of the mentally ill patients, but instead to relieve overcrowding at an unrelated woman's portion of the jail. (*Id*.).

Plaintiff claims that the conditions in Division Ten made him unstable because of his mental illness and he was placed in segregation for ninety days in January 2009. (*Id*. at pg. 6,

¶ 24). Plaintiff's medication was stopped for approximately three weeks during this period. (*Id.* at pg. 6 at ¶ 25). He also did not receive assistance for his mental illness while in segregation despite his requests. (*Id.*).

Once released from segregation, Plaintiff was transferred to Division One. (*Id.* at pg. 6, ¶ 26). Defendant John Doe #1, who Plaintiff describes as either a med-tech, physician assistant or doctor, (*id.* at pg. 3, ¶ 9), stopped Plaintiff from receiving medication or seeing a doctor for his mental illness while Plaintiff was at Division One. (*Id.* at pg. 6, ¶ 26). Plaintiff states that he explained to John Doe #1 that he needed his medication and treatment, and without it he was at greater risk to be attacked by other inmates. (*Id.* at pg. 6-7, ¶ 29). John Doe #1 was reportedly unmoved by Plaintiff's explanation and continued to deny his medical requests. (*Id.*).

Plaintiff remained in Division One for the next six months until November 2009. (*Id.* at pg. 7, ¶ 31). He made additional requests for medical treatment to John Doe #2, a med-tech, physician's assistant or doctor at the jail, (*id.* at pg. 3, ¶ 10), but he too refused Plaintiff's requests. (*Id.* at pg. 7, ¶ 30). The alleged lack of treatment and medication made Plaintiff more and more delusional, suicidal, and depressed during this time period. (*Id.* at pg. 7, ¶ 31). In November 2009, Plaintiff was attacked and severely beaten by seven other inmates resulting in nerve damage to his face and neck. (*Id.*). Plaintiff had made a request to defendant Officer Harris to relocate him prior to the attack but Harris had refused. (*Id.*). Plaintiff was not relocated to a different tier of Division One until after the attack. (*Id.*).

After the November 2009 attack, Plaintiff called home and learned that his mother had died. (*Id.* at pg. 7, ¶ 32). This aggravated Plaintiff's delusions and depression and he again

attempted suicide both by hanging himself and by setting himself on fire on November 16, 2009. (*Id*.). Plaintiff states that it was mandatory under jail policy for him to be transferred to Dr. Luke's care at Cermak Hospital following his suicide attempt. (*Id*. at pg. 8, at ¶ 34). Plaintiff claims that John Doe #2 prevented his transfer in violation of this policy. (*Id*.). Plaintiff asserts that Lieutenant Kelly interceded and forced Plaintiff's transfer to Cermak Hospital. (*Id*. at pg. 8, ¶ 35). (Lieutenant Kelly is not a defendant). Plaintiff received medication and treatment at Cermak Hospital that he says he was denied while at Division One. (*Id*. at pg. 8, ¶ 36). Plaintiff was again returned to Division Ten, and again did not receive any additional treatment, but instead was "warehoused." (*Id.* at pg. 8, ¶ 37).

Plaintiff sues Dart and Godinez in their individual and official capacities and alleges that they acted with deliberate indifference by closing the residential treatment unit in 2008. (*Id*. at pg. 10, ¶¶ 46, 49). Dart and Godinez allegedly knew that closing the residential treatment unit was against the advice of medical experts and the Department of Justice report. (*Id*.). By closing the unit, Plaintiff claims that he was harmed because he was both deprived a place where he could receive treatment, and the relocation of mentally ill detainees created a chaotic situation at Division Ten. (*Id*.). (Plaintiff has claims against other Defendants but they are not discussed because the present motion to dismiss is brought by Defendants Dart and Godinez). Plaintiff seeks a declaration that his constitutional rights were violated, an injunction prohibiting Dart and Godinez from continued violation of his constitutional rights, compensatory and punitive damages. (*Id*. at pg. 13-14, ¶¶ 57-61). Plaintiff claims that he has exhausted his administrative remedies as to his claims. (*Id*. at pg. 9).

Defendant Dart and Godinez's present motion to dismiss argues that they should be dismissed from the action as individual Defendants. (Dkt. Nos. 8, 9). They argue that Plaintiff's allegation that their decision to close the residential treatment facility is insufficient to demonstrate the requirement of individual action — a necessary component of a § 1983 claim. (Dkt. No. 9 at 4). Defendants continue that Plaintiff does not claim that they engaged in any individual involvement such as denying him medication, treatment, placing him in the general jail population or failing to address his suicide risk. (*Id*.). Alternatively, Defendants argue that punitive damages are not appropriate in regard to Plaintiff's claim made against them in their official capacities. (*Id*. at 5).

## II. <u>ANALYSIS</u>

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To satisfy the notice-pleading standard, a complaint must provide a 'short and plain statement of the claim showing that the pleader is entitled to relief,' which is sufficient to provide the defendant[s] with 'fair notice' of the claim and its basis." *Bridges*, 557 F.3d at 545 (quoting *Erickson*, 551 U.S. at 89). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The complaint must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative

level." *Bridges*, 557 F.3d at 546 (internal quotation marks and citations omitted) (emphasis in original).

### A. Dart and Godinez's Motion to Dismiss as Individual Defendants.

Defendants Dart and Godinez argue that they should be dismissed as individual defendants because Plaintiff has failed to, and cannot provide, a plausible allegation in his Complaint that they were personally involved in the alleged constitutional deprivations. (Dkt. No. 9 at 3-4). The Defendants are incorrect. Plaintiff does state a claim against Dart and Godinez in their individual capacities, and so this part of their motion is denied.

"In order to state a claim under § 1983, a plaintiff must sufficiently allege that: (1) a person acting under color of state law, (2) deprived him of a right, privilege or immunity secured by the Constitution or laws of the United States." *London v. RBS Citizens, N.A.*, 600 F.3d 742, 745-46 (7th Cir. 2010) (citing *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). There is no dispute that the first element of acting under color of law is satisfied as to Defendants Dart and Godinez. *See Wilson v. Pric*, ____ F.3d ____, No. 09-2904, 2010 WL 3861005, at *2 (7th Cir., Oct. 4, 2010).

As to the second element of a § 1983 claim — deprivation of a federal right — Plaintiff alleges that Defendants were deliberatively indifferent to his medical needs, his suicide risk and failed to protect him against assault from other prisoners. As a pretrial detainee, Plaintiff's deliberate indifference claims arise under the Fourteenth Amendment, and are adjudicated under the traditional deliberate indifference standard. *See Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010). Deliberate indifference to a detainee's medical needs, suicide risk and failure to

protect against an assault from other detainees are all potentially cognizable constitutional claims under § 1983. *See, Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (medical condition); *Minix*, 597 F.3d at 831 (suicide risk); *Santiago v. Walls*, 599 F.3d 749, 756-57 (7th Cir. 2010) (failure to protect from assault by other inmates).

Defendants Dart and Godinez, however, argue that Plaintiff fails to properly allege personal involvement on their part in the alleged constitutional violations. "In addition to the element of deliberate indifference, § 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (citations omitted). The personal involvement requirement is necessary, "[b]ecause there is no theory of *respondent superior* for constitutional torts, a plaintiff 'must plead that each government official defendant, through the official's own individual actions, has violated the Constitution.'" *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009)).

However, Plaintiff is not alleging that Defendants are liable under *respondent superior* because he is not claiming that Dart and Godinez should be held liable for the alleged shortcomings of those under their supervision. Instead, Plaintiff seeks to hold Dart and Godinez individually liable for the consequences of their alleged personal decision to close down the residential treatment unit in the Summer of 2008 against medical advice. (Dkt. No. 6 at pgs. 5-6, ¶¶ 22, 23). Plaintiff alleges that his detention in this very violent and unstable environment in Division Ten aggravated his mental illness, leading to his improper placement in segregation, his return to Division One, the attack and beating by other detainees, and his second suicide attempt.

(*Id*. at pgs. 6-7, ¶¶ 24, 31, 32). In short, Plaintiff believes that Division Ten should have been a safe space for his treatment while at the jail, and that Dart and Godinez's individual decision eliminated this enclave leading to his various injuries. A supervisor or other senior official such as Dart and Godinez may be held liable when their individual actions violate the Constitution including creating an atmosphere resulting in a Plaintiff's harm. *See T.E.*, 599 F.3d at 590-91 (holding that a supervisor can be held liable for his decisions which resulted in creating an atmosphere that allowed abuse to flourish); *Chavez v. Illinois State Police*, 251 F.3d 612, 652 (7th Cir. 2001) (recognizing that supervisor is liable when he directed the conduct causing the constitutional violation); *Jones*, 856 F.2d at 993 ("In constitutional tort cases as in other cases, a man is responsible for the natural consequences of his actions.") (citations omitted).

Defendants Dart and Godinez are correct that Plaintiff does not allege that they "personally refused [plaintiff] his medication, placed him in the general population of the Jail, or failed to address his treats of suicide." (Dkt. No. 9 at 4). But, Dart and Godinez's alleged constitutional violation is their decision to create the environment which Plaintiff claims led to his injuries and this is a permissible cause of action under § 1983. Therefore, Defendant Dart and Godinez's motion to dismiss as to Plaintiff's claims against them in their individual capacity is denied.

### B. Dart and Godinez's Motion to Dismiss as to Punitive Damages.

Defendants Dart and Godinez also move to dismiss Plaintiff's claim for punitive damages to the extent that he seeks to recover them in their official capacity. (Dkt. No. 9 at 5). Punitive damages may be awarded against a government actor sued in his individual capacity, but punitive

damages cannot be recovered from a municipality. *Minix*, 597 F.3d at 830 (citations omitted). A suit against an individual in his official capacity is considered a suit against the government entity. *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008). Defendants are correct that Plaintiff's official capacity claim against them is in actuality a claim against their municipalities. Thus, Plaintiff cannot receive punitive damages against Defendants in a suit against them in their official capacity. Furthermore, this Court previously dismissed Cook County as a defendant in this action holding that Plaintiff had failed to properly allege a *Monell* claim. (Dkt. No. 5 at 2). Defendants' motion to dismiss on this point is granted.

### III. CONCLUSION

For the reasons stated herein, Defendants Motion to Dismiss is granted in part and denied in part. Defendants Dart and Godinez's Motion to Dismiss Plaintiff's claims against them in their individual capacities is denied. Dart and Godinez's Motion to Dismiss Plaintiff's punitive damages claim against them in their official capacities is granted. Defendants Dart and Godinez are ordered to answer Plaintiff's complaint within twenty (20) days of the entry of this Memorandum Opinion and Order.

**IT IS SO ORDERED:**

DATE: 11/10/2010

Harry D. Leinenweber, Judge
United States District Court